UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BRENDA FOSTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 2:21-cv-00282-PPS-JEM |
| v. | ) |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Brenda Foster seeks judicial review of the Social Security Administration's decision to deny her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 1382c(a)(3). Foster, a 56-year-old woman, alleges disability based upon back pain from degenerative disc disease, incontinence, hypertension, obesity, and insomnia. [Tr. 18-20, 259-71, 422.][1] She originally alleged disability as of June 12, 2016, but later amended it to June 22, 2018. [Tr. 15, 37-38, 169-70.] During her hearing before the Administrative Law Judge, Foster testified that she suffered pain "like a sharp knife" in her back. [Tr. 55-56.] She is able to stand for only fifteen to twenty minutes at a time and could only walk approximately half a block at a

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 4.

1

time. [Tr. 56-57.] Treatment with injections provided only slight relief at first, and then they quit helping. [Tr. 59-60, 263, 338.] Foster also testified about her incontinence, which causes her to use the bathroom twice per hour, and results in embarrassing accidents approximately once per week and when she lifts objects more than fifteen pounds. [Tr. 52-54.] She also testified about her depression and anxiety. [Tr. 57.]

The ALJ concluded that Foster was not disabled within the meaning of the Social Security Act at any time from the alleged onset date through December 31, 2018, the date last insured. [Tr. 15-16, 25.] In reaching this conclusion, the ALJ found that Foster had the residual functioning capacity (RFC) to perform light work except occasionally she could climb ladders, ropes, and scaffolds, ramps, and stairs; balance, stoop, kneel, crouch, and crawl; and be exposed to unprotected heights. [Tr. 19.] The ALJ also found that Foster was capable of performing her past relevant work as a cashier and food server. [Tr. 24.] The ALJ's decision became the final decision of the Commissioner on July 16, 2021, when the Appeals Council denied Foster's request for review.

This case presents two categories of issues. The first type involves whether the ALJ correctly applied the law in reaching her conclusion about Foster's disability status. In that regard, I need to consider whether the RFC determination was substantially supported by the evidence and whether Foster's symptoms were properly evaluated. The second issue relates to constitutional separation of powers. Foster claims that the structure of the Social Security Administration violates Article II of the Constitution in

such a way that renders the ALJ's judgment defective. In summary, because I find that the ALJ failed to properly evaluate Foster's symptoms in determining her disability status, I will **REVERSE** the ALJ's decision and **REMAND** on this issue. As a consequence, nothing more need be said about the constitutional issue.

## Discussion

Let's begin with some basics: when deciding social security appeals, I am not supposed to determine from scratch whether or not Foster is disabled. Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). My review of the ALJ's decision is deferential. This is because the "substantial evidence" standard is not a particularly rigorous one. In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the-evidence standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Of course, there has to be more than a "scintilla" of evidence. *Id.* So in conducting my review, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nonetheless, the review is a light one and the substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

As recited in the ALJ's opinion, pursuant to SSR 16-3p, an ALJ should engage in a two-step process to evaluate a claimant's symptoms. [Tr. 16.] First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3P, 2017 WL 5180304, at *3 (Oct. 25, 2017). Second, if an underlying impairment that could reasonably be expected to produce the symptoms is established, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* at *3. The ALJ's determination "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

Factors to consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or

4

has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *8.

In this case, the ALJ found Foster's medically determinable impairments could reasonably be expected to cause the alleged symptoms. [Tr. at 20.] But the ALJ also found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not sufficiently consistent with the medical evidence and other evidence for the reasons explained in this decision." *Id.* In essence, this was a credibility determination made by the ALJ. It is true that courts historically have not overturned the ALJ's credibility determination unless it was "patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). While this is certainly a difficult standard to overcome, for the following reasons I find that this is one of those cases where the ALJ's assessment of subjective symptoms was not adequately explained.

For starters, the Seventh Circuit has commented many times that the type of statement made by the ALJ here—that Ms. Foster's "symptoms are not sufficiently consistent with the medical evidence"—is "'meaningless boilerplate' if the ALJ does not offer more of an explanation for the purported inconsistencies." *Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018) (quoting *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016)). That's precisely what happened here. The ALJ's statement about Ms. Foster's symptoms is nothing more than a conclusion; it's not a reason.

5

And there was strong evidence to the contrary. At her hearing, Foster testified that she suffers from "embarrassing" symptoms of incontinence. She finds herself needing to use the restroom twice per hour, requiring her to always stay close to a bathroom. [Tr. 52.] Despite her use of precautionary measures, she experienced accidents at least once per week. [Tr. 54.] She testified that incontinence would also occur even with light exertion, such as coughing, sneezing, and even lifting as little as ten pounds. [Tr. 53-55.]

What's more, Foster's testimony was entirely consistent with the other medical evidence. As the ALJ noted, Foster received a medical diagnosis of incontinence and was prescribed medication to treat this condition. [Tr. 18 (citing *twelve* instances in the medical records indicating this diagnosis, and *six* instances in the medical records indicating relevant prescription treatment).] The ALJ acknowledged that Foster testified that her incontinence issues began in 2018, yet completely ignored all of her testimony regarding her subjective symptoms. [Tr. 18.] This bare-bones description of the record was immediately followed by the ALJ's conclusion that, "[t]here is no evidence in the records that the claimant experienced any functional limitations from this impairment." [Tr. 18.] Later in the opinion, the ALJ conceded that the medical impairment could reasonably be expected to cause alleged functional limitations. [Tr. 20.] However, the ALJ ignored not only Foster's own testimony, but also that of the vocational expert who indicated the accommodation that would be required for Foster to manage her

6

incontinence would be "work preclusive." [Tr. 66.] *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected").

In sum, the ALJ never explained what warranted her conclusion that Foster's incontinence resulted in no functional limitations, even though the evidence in the record suggests both pervasiveness and severity, as well as an inconsistency with the ALJ's determinations regarding the RFC and her ability to do past work. *See Plessinger*, 900 F.3d at 917 (remanding because the ALJ did not build a logical bridge from the evidence to his conclusion.) A remand is therefore required to give the ALJ an opportunity to explain why Foster's testimony regarding her problems with incontinence should or should not be disregarded.

There are other errors the ALJ made with respect to her consideration of Foster's subjective symptoms. Although I will not list them all here, let's consider the following example regarding Foster's ability to walk: At her hearing, Foster testified she needed to change positions about every fifteen minutes. [Tr. 51.] When asked explicitly if her degenerative disc disease "impact[ed] [her] walking or standing," Foster responded "Yes, it did," going on to explain that she could walk "about a block and a half" and "part ways [*sic*] through a store" before needing to sit. [Tr. 56-57.] Notably, Foster recorded on her work history report that all her previous work required her to be on

her feet eight hours per day. [Tr. 205-09.] Finally, she testified that she could only stand for twenty minutes at a time and sit for twenty five minutes at a time. [Tr. 57.]

      The ALJ found Foster's lumbar degenerative disc disease and obesity to be severe, medically determinable impairments. [Tr. 17-19.] The ALJ further asserted that these impairments "could be reasonably expected to cause the alleged symptoms." [Tr. 20.] Indeed, this appears logical. Foster was diagnosed with "severe degenerative disc disease." [Tr. 422.] Additionally, Dr. Brian Cassini, her chiropractor, diagnosed Foster with bilateral sciatica. [Tr. 567-68, 571-73, 576-78, 580-82, 584-86, 588-90, 592-94.] Foster also has documented chronic lumbar degenerative changes, and disc herniation impinging on the thecal sac and subarticular zones. [Tr. 70-71.] She has consistently received treatment for this back pain and has received multiple injections. [Tr. 272-95, 454-92, 779-88.] Foster has also been found to be routinely obese. [Tr. 17.] Foster is 5 '6" tall and weighs between 200 and 207 pounds, with a body mass index (BMI) of 32-33 which is considered 'Level I' obesity. [Tr. 22, 259, 338; SSR 19-2p.]

      Despite acknowledging all this, the ALJ nevertheless twice concluded that "there was no evidence [Foster] was unable to effectively ambulate," despite her testimony to the contrary. [Tr. 19, 23.] In arriving at her conclusion, the ALJ found the consultative opinions "neither valuable nor persuasive." [Tr. 23.] The ALJ also stated that "other than examinations conducted by the claimant's chiropractor, the claimant's physical examinations have been normal." [Tr. 23.] The ALJ was in error to acknowledge the

8

contrary evidence (testimony of subjective symptoms consistent with diagnoses, and the opinion of Dr. Cassini) but then summarily dismiss it without a coherent explanation. *See Moore*, 743 F.3d 1118 at 1123 ("The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected.").

    The ALJ is not meant to engage in a credibility analysis of subjective symptoms; rather, their own Agency guidance directs ALJs to conduct an evaluation of whether the claimant's testimony is consistent with the record. *See* SSR 16-3p, 2017 WL 5180304, at *2 ("[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character"). The ALJ points to evidence in the medical record of a "steady gait." [Tr. 21.] But this is not actually inconsistent with Foster's testimony regarding her inability to walk for long periods of time, which was required of her at her past relevant employment. [Tr. 51-57.] *See also Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (finding that the ALJ was not "qualified or authorized" to interpret the medical data).

    Not only was the ALJ's rationale insufficient to dismiss evidence of treatment and subjective symptoms consistent with diagnoses, but also a meaningful analysis of the combined effects of the lumbar degenerative disc disease and Foster's obesity was absent. *See Browning v. Colvin*, 766 F.3d 702, 706 (7th Cir. 2014); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original) ("[T]he ALJ needed to consider

9

the *aggregate* effect of this entire constellation of ailments – including those impairments that in isolation are not severe."). At first glance, the ALJ seems to cover her bases, because she does cite to medical records in the evidence. [Tr. 22.] However, a closer look reveals that the ALJ acknowledged the potential effects of obesity, but then dismissed its impact on Foster without analyzing the full aggregate effect of Foster's obesity combined with her other impairments. [Tr. 22.] Moreover, in considering Foster's ability to walk and the effects of her obesity combined with her other impairments, the ALJ relies on mere conclusions (e.g., "there was no evidence her ability to ambulate was affected;" "[t]aking into consideration the claimant's subjective reports of pain and balance [*sic*] those with the objective findings the record supports the postural and environmental limitations in the light residual functional capacity."). [Tr. 23.] Agency guidelines try to avoid situations like the one raised in the instant case by warning against this kind of vacuous cookie-cutter language. *See* SSR 16-3p, 2017 WL 5180304, at *10 ("In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement . . . that 'the individual's symptoms are (or are not) supported or consistent.").

     In sum, I am remanding to afford the ALJ an opportunity to more fully explain her conclusion that Ms. Foster's symptoms are not consistent with the other evidence in the case. And because I am finding that this matter must be remanded, I need not weigh into the constitutional issue raised by Foster.

**Conclusion**

For the reasons set forth above, the Commissioner of Social Security's final decision is REVERSED and this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: September 19, 2022.

<u> /s/    Philip P. Simon        </u>
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT